**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEVIN  PUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:15-cv-01747-TWP-DKL |
| | ) | |
| NATIONAL COLLEGIATE ATHLETIC | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON PARTIAL MOTION TO DISMISS

This matter is before the Court on the Defendant, National College Athletic Association's ("NCAA") Partial Motion to Dismiss. (Filing No. 34.)  On November 5, 2015, the Plaintiff, Devin Pugh ("Pugh"), filed a class action complaint alleging anti-trust violations against the NCAA. Count II of the Complaint alleges that Division I Bylaw 14.5.5.1 (the "year-in-residence bylaw") violates the Sherman Act by requiring Division I student-athletes to forego a year of athletic eligibility when transferring to another Division I school.  On January 15, 2016 the NCAA filed a motion to dismiss Count II of the Complaint. For the following reasons, the Court grants the NCAA's partial motion to dismiss.

## I.  BACKGROUND

In 2010, Pugh accepted a Division I grant-in-aid to play football at Weber State University, a Division I FCS[1] school.  (Filing No. 1 at 25.)  A full grant-in-aid is the amount of scholarship that sometimes is referred to as a *full ride*.  It includes the cost of tuition, fees, room, board and

---

[1] FBS is the acronym for Football Bowl Subdivision, formerly known as Division 1-A; and FCS is the acronym for the Football Championship Subdivision, formerly known as Division I-AA. *See* https://en.wikipedia.org/wiki/NCAA_Division_I_Football_Bowl_Subdivision, last visited Aug. 10, 2016; https://en.wikipedia.org/wiki/NCAA_Division_I#Football_Championship_Subdivision, last visited Aug. 10, 2016.

required textbooks for student athletes. The period of an award cannot exceed one year. Weber State's head coach, Ron McBride, pledged to Pugh that his grant-in-aid would be renewed annually so long as he did well academically and remained eligible for NCAA competition.  (*Id*.)  In December 2011, after Coach McBride retired, Weber State named a new head football coach, Jody Sears.  (*Id*. at 26.)  Around the same time, Coach Sears informed Pugh that Weber State would not be renewing his grant-in-aid and that he should look into transferring to another school.

After sending highlight tapes to numerous schools, Pugh was offered full grants-in-aid at several FBS and FCS schools.  *Id*. at 27-28.  However, all of the grants-in-aid were contingent upon his ability to play two more years of NCAA football.  *Id*.  Because the NCAA's "year-in-residence" bylaw required that Pugh sit out of competition for a full season, he only had one year of competition left.  *Id*. at 28.  As a result, Pugh applied for a "hardship waiver," which would have allowed him to play immediately and for the two years remaining on his five-year clock.  *Id*.  The NCAA, however, denied the request for a hardship waiver and, as a result, every grant-in-aid offer was rescinded.  *Id*.

In 2013, Pugh transferred to Colorado State University-Pueblo.  *Id*.  Because Pugh transferred from a Division I school to a Division II school, he was eligible for a one-time transfer exception and did not have to sit out for a year, giving him two seasons left to play NCAA football.  *Id*.  However, Pugh's new grant-in-aid award was less than at Weber State, covering only tuition, but not books, housing, or any other costs.  *Id*. at 29.  As a result, Pugh's school loans increased from approximately $3,000.00 per year to $6,000.00 per year.  *Id*.  Following a football injury and job offer, Pugh left school with nine credits left to graduate, which he intends to finish.  *Id*. at 29.

In Count II of this cause of action, Pugh argues that the NCAA's transfer bylaws violate the Sherman Act as an unreasonable restraint on trade.  *Id*. at 36-37.  He focuses his challenge on

the "year in residence" requirement, which is listed in Article 14 of the NCAA Division I Manual, entitled "Academic Eligibility".  (Filing No. 34-2 at 7, 34; Filing No. 35 at 7; Filing No. 43 at 7.) That bylaw reads, in relevant part, as follows:

> 14.5.5.1. General Rule.  A transfer student from a four-year institution shall not be *eligible* for intercollegiate competition at a member institution until the student has fulfilled a residence requirement of one full academic year (two full semesters or three full quarters) at the certifying institution.

(Filing No. 34-2 at 34) (emphasis added).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to sets forth a claim upon which relief can be granted.  "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits."  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  Accordingly, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At a minimum, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests; and the factual allegations must raise a right to relief above the speculative level.  *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009); *Tamayo*, 526 F.3d at 1081, 1083.  While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 . . . demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Although this does not require heightened fact pleading of specifics, it does require the complaint to contain enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp.*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief").

### III. DISCUSSION

To begin, the Court notes that the NCAA has not sought dismissal of Count I of this action related to Sherman Act violations regarding the NCAA's scholarship restrictions. Instead, the NCAA seeks dismissal of only Count II, related to alleged Sherman Act violations regarding the NCAA's transfer rules. In addition, the NCAA seeks to dismiss the request for injunctive relief, arguing that Pugh does not have standing to seek such relief. The Court will address each matter in turn.

### A. NCAA Transfer Rules

The NCAA argues persuasively that the challenged "year-in-residence" eligibility bylaw is presumptively procompetitive and, therefore, does not violate the Sherman Act.

The Sherman Act applies to NCAA regulations. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 341 (7th Cir. 2012). However, "most of the regulatory controls of the NCAA are justifiable means of fostering competition among amateur athletic teams and therefore procompetitive because they enhance public interest in intercollegiate activities." *Nat'l Collegiate Athletic Ass'n v. Bd. or Regents of the Univ. of Okla.* (hereinafter "*Bd. of Regents*"), 468 U.S. 85,

117 (1984), *Agnew*, 683 F.3d at 341.  As a result, while the Sherman Act does apply to NCAA bylaws, "most regulations will be a justifiable means of fostering competition among amateur athletic teams and are therefore procompetitive".  *Agnew*, 683 F.3d at 341 (noting that challenges to "procompetitive" NCAA bylaws are properly dismissed during the motion to dismiss stage).

When considering the issue raised in Pugh's motion to dismiss, the Seventh Circuit has stated that the "question to be answered" is whether the challenged NCAA bylaw is "presumptively procompetitive" *Id*. (noting that this threshold question is the "first-and possibly only-question" and indicating that, if the question is answered in the affirmative, there is no need for the court to conduct a "Rule of Reason" analysis of the challenged bylaw).  Justifying the procompetitive presumption for certain NCAA regulations, the Seventh Circuit explained that:

> [a] certain amount of collusion in college football is permitted because it is necessary for the product to exist.  Accordingly, when an NCAA bylaw is clearly meant to help maintain that "revered tradition of amateurism in college sports" or the "preservation of the student-athlete in higher education," the bylaw will be presumed procompetitive, since we must give the NCAA "ample latitude to play that role".

*Id*. (quoting *Bd. of Regents*, 468 U.S. at 117).

The NCAA bylaw which Pugh challenges in his second cause of action directly relates to eligibility.  The challenged "year-in-residence" bylaw is listed in Article 14 of the NCAA Division I Manual, which is entitled "Academic Eligibility".  (Filing No. 34-2 at 7, 34.)  In addition, the challenged bylaw specifically references eligibility in its text.  For example, the first section of the challenged bylaws reads, in relevant part, as follows:

> 14.5.5.1. General Rule.  A transfer student from a four-year institution shall not be *eligible* for intercollegiate competition at a member institution until the student has fulfilled a residence requirement of one full academic year (two full semesters or three full quarters) at the certifying institution.

(Filing No. 34-2 at 34) (emphasis added) (*See also* Filing No. 43 at 7) (wherein Pugh identifies this bylaw as the focus of his cause of action).

In this regard, the law is clear. NCAA eligibility bylaws are "presumptively procompetitive" and, therefore, do not violate the Sherman Act. *See, e.g.*, *Bd. or Regents*, 468 U.S. at 117 (noting that NCAA rules which determine the eligibility of participants "fit the same mold" as other procompetitive regulatory controls); *Agnew*, 683 F.3d at 343 ("[m]ost-if not all-eligibility rules . . . fall comfortably within the presumption of procompetitiveness afforded to certain NCAA regulations"); *Smith v. Nat'l Collegiate Athletic Ass'n*, 139 F.3d 180, 185-86 (3rd Cir. 1998) *vacated on other grounds by Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999) (collecting cases and concluding that "the Sherman Act does not apply to the NCAA's promulgation of eligibility requirements" because the NCAA's eligibility rules "are not related to the NCAA's commercial or business activities"); *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1344-45 (5th Cir. 1988) (concluding that the eligibility rules "do not violate the antitrust laws" and noting that "[t]he eligibility rules create the product [of college football] and allow its survival in the face of commercializing pressures").

Accordingly, because the challenged bylaw is directly related to eligibility, it is presumptively procompetitive and no further analysis under the Sherman Act is required. *See Agnew*, 684 F.3d at 341 (noting that challenges to bylaws that are presumptively procompetitive are properly dismissed "in a twinkling of an eye" without a detailed analysis). Instead, dismissal of the Pugh's second cause of action is warranted.

Pugh's arguments to the contrary are unavailing, as the cases he cites in support did not involve challenges to eligibility bylaws but rather involved challenges to bylaws affecting the distribution of scholarships. *See Rock v. Nat'l Collegiate Athletic Ass'n*, No. 1:12-cv-1019-JMS-

DKL, 2013 WL 4479815 (S.D. Ind. Aug. 16, 2013) (evaluating a challenge to a bylaw limiting the number and distribution of Division I football scholarships); *White v. Nat'l Collegiate Athletic Ass'n*, No. CV 06-999-RGK (MANx), 2006 WL 8066802 (C.D. Cal. Sept. 21, 2006) (evaluating a challenge to the NCAA's caps on grants-in-aid); *NCAA I-A Walk-On Football Players Litig.*, 398 F. Supp. 2d 1144, 1151 (W.D. Wisc. 2005) (evaluating a challenge to the limitations on the number of football scholarships).  As such, Pugh's arguments and supporting cases are better applied in support of his first claim which addresses the NCAA's limits on the number and distribution of Division I football scholarships, a claim that the NCAA has not challenged in its partial motion to dismiss.

In addition, although Pugh alleges to have suffered economic harm by having to take a diminished grant-in-aid at his transfer school, it does not change the Court's conclusion.  Assuming that this Court chose to ignore the long line of cases that have already determined the NCAA's eligibility bylaws to be presumptively procompetitive and, instead, attempted to determine whether the challenged bylaws are commercial as Pugh suggests, the Court would still be required to consider the character of the NCAA's activities rather than Pugh's injuries.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 433 (6th Cir. 2008); *Smith*, 139 F.3d at 185 ([r]ather than intending to provide the NCAA with a commercial advantage, the eligibility rules primarily seek to ensure fair competition in intercollegiate athletics").  Further, even though the non-economic eligibility bylaw allegedly had an indirect economic impact on Pugh, the Court is required to give the NCAA "ample latitude" "in the maintenance of a revered tradition of amateurism in college sports".  *See Bd. of Regents*, 468 U.S. at 117; *Agnew*, 683 F.3d at 341; *see also McCormack*, 845 F.2d at 1345 ("[t]hat the NCAA has not distilled amateurism to its purest form does not mean its attempts to maintain a mixture containing some amateur elements are unreasonable").  Because the

7

challenged "year-in-residence" bylaw relates directly to eligibility, the challenged bylaw is presumptively procompetitive and does not violate the Sherman Act. Therefore, Count II of this action is dismissed.

## B.    Injunctive Relief

In addition, Pugh does not have standing to request injunctive relief. Pugh requests equitable relief to require NCAA schools to award multi-year Division I football scholarships and to enjoin the NCAA from "artificially reducing the total supply of scholarships available to NCAA student-athletes" and from "restricting players' ability to transfer without loss of athletic eligibility". (Filing No. 1 at 38.)

The "irreducible constitutional minimum of standing" requires a showing of (1) injury in fact; (2) causation; and (3) redressability. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998); *Scherr, v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073-74 (7th Cir. 2013). Where a complaint's allegations demonstrate that the plaintiff cannot plausibly meet the requisite standing requirements, the complaint should be dismissed pursuant to Rule 12(b)(1). *See Retired Chic. Police Ass'n v. City of Chic.*, 76 F.3d 856, 862 (7th Cir. 1996); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (noting that a complaint must set forth "allegations regarding standing sufficient to withstand a motion to dismiss" by showing "that it is plausible that [the plaintiff] ha[s] standing").

In this regard, the NCAA points out that Pugh's five-year eligibility to compete expired in the summer of 2015, pursuant to NCAA Bylaw 12.8.1. (*See* Filing No. 34-4 at 7.) From that day forward, a few months before he filed this lawsuit, Pugh became ineligible to participate as a student-athlete. As such, the NCAA contends, and the Court agrees, that Pugh cannot show injury-in-fact or redressability.

Showing injury in-fact requires a "real and immediate" threat of future violations of the plaintiff's rights. *Scherr*, 703 F.3d at 1074.  As the NCAA points out, Pugh is no longer subject to NCAA rules as a student-athlete.  Consequently, because the challenged NCAA rules no longer affect Pugh, no injunction against the NCAA can redress any injury to him. *See, e.g.*, *Steel Co.*, 523 U.S. at 109.  In addition, because his five years of eligibility have expired and Pugh has not demonstrated any clear explanation regarding how he might seek approval for additional eligibility, any arguments regarding future eligibility – if that is even possible – are entirely too speculative to survive a motion to dismiss. *See Derfus v. City of Chic.*, 42 F. Supp. 3d 888, 895 (N.D. Ill. 2014) ("[s]tanding for injunctive relief requires that a plaintiff demonstrate that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).

Pugh also argues that the "inherently transitory" rule applies to his request for injunctive relief, preventing dismissal based on lack of standing.

> [T]he relation-back doctrine may apply in Rule 23 cases where it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530-31 (2013).  "The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course," *Id*. at 1531 (noting further that the doctrine "has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy").

At first blush, the Court finds this argument to be somewhat persuasive, given the fact that student-athletes are limited in their years of eligibility and, as this case demonstrates, class actions are often protracted and drawn out. However, the Court notes that, in Pugh's case, he was no longer eligible to compete as a student-athlete *before* he filed his Complaint. As such, this is not a matter of Pugh "timing out" of the case. Instead, at no point in the life of this case, did Pugh have standing to seek injunctive relief. Unfortunately for Pugh, he lacks standing to request injunctive relief therefore dismissal of that requested relief is warranted. *See Holmes v. Fisher*, 854 F.2d 229, 233 (7th Cir. 1988) ("[t]o permit the certification of a class headed by a 'representative' who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions").

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** the NCAA's Motion for Partial Dismissal of Plaintiff's Complaint. (Filing No. 34.) Count II of the Complaint, related to Sherman Act violations regarding the NCAA's transfer rules, is **DISMISSED with prejudice**. In addition, Pugh's request for injunctive relief is also **DISMISSED**.

This action remains pending on Pugh's claims of Sherman Act violations regarding the NCAA's football scholarship restrictions.

**SO ORDERED**.

Date: 9/27/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jacob K. Danziger
350 S. Main Street, Suite 210,
jdanziger@schiffhardin.com

Daniel E. Pulliam
FAEGRE BAKER DANIELS LLP
(Indianapolis)
daniel.pulliam@faegrebd.com

Kathy Lynn Osborn
FAEGRE BAKER DANIELS LLP
(Indianapolis)
kathy.osborn@faegrebd.com

Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO
LLP
dank@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
steve@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO,
LLP
beth@hbsslaw.com

Joseph N. Williams
RILEY WILLIAMS & PIATT, LLC
jwilliams@rwp-law.com

William N. Riley
RILEY WILLIAMS & PIATT, LLC
wriley@rwp-law.com

Cherie Phears O'Reilly
SCHIFF HARDIN LLP Atlanta
coreilly@schiffhardin.com

Gregory L. Curtner
SCHIFF HARDIN, LLP - Michigan
gcurtner@schiffhardin.com

Robert James Wierenga
SCHIFF HARDIN, LLP - Michigan
rwierenga@schiffhardin.com

Suzanne L. Wahl
SCHIFF HARDIN, LLP - Michigan
swahl@schiffhardin.com

Sara  Willingham
THE PAYTNER LAW FIRM PLLC
swillingham@paynterlawfirm.com

Stuart McKinley Paynter
The Paynter Law Firm PLLC
stuart@paynterlawfirm.com