**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEVIN PUGH on behalf of himself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:15-cv-01747-TWP-DKL |
| v. | ) | |
| | ) | |
| THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION FOR FINAL JUDGMENT OR CERTIFICATION OF INTERLOCUTORY APPEAL

This matter is before the Court on Plaintiff Devin Pugh's ("Pugh") Motion for Final Judgment pursuant to Federal Rule of Civil Procedure 54(b) and Certification of Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b). (Filing No. 49.) On November 5, 2015, Pugh filed a two-count class action complaint alleging that Defendant National Collegiate Athletic Association ("NCAA") violated the Sherman Act, 15 U.S.C. § 1. In particular, Count I is applicable to Pugh's claims regarding the NCAA's prohibition of multi-year scholarships and the NCAA's cap on athletic scholarships, and Count II is applicable to Pugh's claims regarding the NCAA's transfer rules. On September 27, 2016, the Court granted NCAA's Motion to Dismiss Count II of the Complaint. (Filing No. 48.) Pugh now seeks final judgment or, in the alternative, certification of interlocutory appeal on Count II in order to permit immediate appeal to the Seventh Circuit. (Filing No. 49.) For the reasons set forth below, the Motion for Final Judgment and Certification of Interlocutory Appeal is **DENIED**.

# I.   BACKGROUND

In 2010, Pugh accepted a Division I grant-in-aid to play football at Weber State University ("Weber"), a Division I FCS school.  (Filing No. 1 at 25.)  A full grant-in-aid is the amount of scholarship that sometimes is referred to as a *full ride*.  It includes the cost of tuition, fees, room, board and required textbooks for student athletes.  The period of an award cannot exceed one year and FCS schools may not award more than sixty-three full grants-in-aid.  *Id.* at 8.  Weber State's head coach, Ron McBride, pledged to Pugh that his grant-in-aid would be renewed annually so long as he did well academically and remained eligible for NCAA competition.  *Id.*  In December 2011, after Coach McBride retired, Weber State named a new head football coach, Jody Sears.  *Id.* at 26.  Coach Sears informed Pugh that Weber State would not renew his grant-in-aid and that he should consider transferring to another school.

After sending highlight tapes to numerous schools, Pugh was offered full grants-in-aid at several Division I FBS and FCS schools.  *Id.* at 27-28.  However, all of the grants-in-aid were contingent upon his ability to play two more years of NCAA football.  *Id.*  Because NCAA's "year-in- residence" bylaw required Pugh to sit out of competition for a full season, he only had one year of competition left.  *Id.* at 28.  Pugh applied for a "hardship waiver," which would have allowed him to play immediately, however, NCAA denied the request.  As a result, every grant-in-aid offer was rescinded.  *Id.*

In 2013, Pugh transferred to Colorado State University-Pueblo, a Division II school.  *Id.* Because Pugh transferred from a Division I school to a Division II school, he was eligible for a one-time transfer exception and did not have to sit out for a year, giving him two seasons left to play NCAA football.  *Id.*  However, Pugh's new grant-in-aid award was less than at Weber State and covered only tuition, but not books, housing, or any other costs.  *Id.* at 29.  As a result, Pugh's

school loans increased from approximately $3,000.00 per year to $6,000.00 per year. *Id*. Following a football injury and job offer, Pugh left school with nine credits remaining to graduate, which he intends to finish. *Id*. at 29.

On November 5, 2015, Pugh filed a class action Complaint alleging anti-trust violations against NCAA. (Filing No. 1.)   Count I of his Complaint asserts that NCAA bylaws violated the Sherman Act by prohibiting multi-year Division I football scholarships and capping the number of athletic scholarships that could be awarded by Division I member institutions.  Count II of the Complaint alleges that Division I Bylaw 14.5.5.1 (the "year-in-residence bylaw") violates the Sherman Act by requiring Division I student-athletes to forego a year of athletic eligibility when transferring to another Division I school, amounting to an unreasonable restraint on trade.  The pertinent section of the bylaw states:

> 14.5.5.1. General Rule. A transfer student from a four-year institution shall not be *eligible* for intercollegiate competition at a member institution until the student has fulfilled a residence requirement of one full academic year (two full semesters or three full quarters) at the certifying institution.

(Filing No. 34-2 at 34) (emphasis added).

On January 15, 2016, NCAA filed a partial motion to dismiss, seeking only to dismiss Count II of the Complaint.  On September 27, 2016, the Court granted NCAA's partial motion to dismiss, concluding that NCAA's eligibility bylaws are "presumptively procompetitive" and, therefore, do not violate the Sherman Act.  (Filing No. 48.)  Pugh now seeks final judgment or, in the alternative, certification of interlocutory appeal on Count II in order to permit immediate appeal to the Seventh Circuit.  (Filing No. 49.)

## II.   LEGAL ANALYSIS

Under 28 U.S.C. § 1291, federal appellate courts "have jurisdiction over all final decisions of the district courts of the United States, and orders resolving fewer than all the claims in a case

are not 'final' for purposes of an appeal." *General Ins. Co. v. Clark Mall Corp.*, 644 F.3d 375, 379 (7th Cir. 2011) (internal quotations omitted).  However, Fed. Rule Civ. P. 54(b) provides the following exception,

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  A Rule 54(b) order requires the district court to make two determinations: (1) that the order in question was truly a "final judgment", and (2) that there is no just reason to delay the appeal of the claim that was "finally" decided.  *Gen. Ins. Co.*, 644 F.3d at 379.

In making the first determination, the district court is mindful that partial final judgment may be entered only when all of one party's claims or rights have been fully adjudicated or when a distinct claim has been fully resolved with respect to all parties.  *Officer v. AS Chase Ins. Life & Annuity Co.*, 500 F. Supp. 2d 1083, 1086 (N.D. Ind. 2007) (internal punctuation omitted).  In this regard, Rule 54(b) allows appeal of claims that are truly separate and distinct from those that remain pending in the district court, where "separate" means having "minimal factual overlap".  *Lottie v. W. Am. Ins. Co., of Ohio Cas. Grp. of Ins. Cos.*, 408 F.3d 935, 939 (7th Cir. 2005) ("[t]he test for separate claims under [Rule 54(b)] is whether the claim that is contended to be separate so overlaps the claim or claims that have been retained for trial, that if the latter were to give rise to a separate appeal at the end of the case, the court would have to go over the same ground that it had covered in the first appeal.").

In making the second determination, the district court must consider whether "there is no just reason for delay," based on the effects that a delay of an appeal would have on the parties. *See ODC Commc'ns Corp. v. Wenruth Invs.*, 826 F.2d 509, 511-12 (7th Cir. 1987).

### III.   DISCUSSION

As previously stated, Pugh requests final judgment or, in the alternative, certification of interlocutory appeal on Count II in order to permit immediate appeal to the Seventh Circuit.

### A.   Final Judgment

#### 1.   Count II is not separate from Count I

Pugh contends that Counts I and II are separate and factually distinct, despite both arising under section one of the Sherman Act. *See Ty, Inc. v. Publications Int'l Ltd.,* 292 F.3d 512, 515 (7th Cir. 2002) (defines "separate" as "involving different facts"). Pugh specifically asserts that Count I is separate because it examines whether NCAA established the now-repealed restraint on multi-year scholarships to preserve amateurism or to conserve costs. (Filing No. 49 at 4.) Pugh contends that the facts relating to Count II are different because it examines whether NCAA established the "year-in-residence" requirement to preserve education and amateurism or for economic motivations. *Id.*

In response, NCAA argues that there is a significant factual, evidentiary, and legal overlap between Counts I and II. NCAA contends that the elements of the two claims are identical and involve, at minimum, a singular injury and a singular measure of damages. NCAA asserts that Pugh's injury and potential damages, due to the loss of his athletic scholarship and the difference in value of the scholarship and tuition costs received when Pugh transferred to the Division II school, are central to both counts and regard the same facts. In reply, Pugh argues that the Court should examine the focus of each claim, rather than the single event of Pugh losing his scholarship,

when determining if the facts of the two counts overlap.  Pugh asserts that Count I focuses on injuries related to his recruitment from high school and offer from Weber College.  In contract, Pugh argues that Count II focuses on his ability to play at another Division I school after losing his scholarship.

Although Counts I and II have some differences, the Court finds that there is significant factual overlap between the two.  Despite Pugh's contention that Count I focuses on events regarding his recruitment from high school and offer from Weber, Pugh specifically asserts in his Complaint that his injury under Count I relates to his loss of scholarship and having to accept a lesser scholarship.[1]  Similarly, Pugh contends that because of the "year-in-residence" requirement challenged under Count II, "Division I football players who have lost grants-in-aid at their current schools are further faced with the decision to transfer to a Division I school where they are unlikely to receive full grants-in-aid, if any aid at all, or transfer to a less competitive Division II school." (Filing No. 1 at 30.)

The Court concludes, and as NCAA persuasively argued, Counts I and II not only arise out of the same transaction, namely the loss of Pugh's scholarship, but the pertinent facts bearing on damages are also the same.  These claims are not considered "separate" for purposes of entering final judgment.  *See Lottie*, 408 F.3d at 939; *See also Horwitz v. Alloy Auto. Co.,* 957 F.2d 1431, 1434 (7th Cir.1992) ("If there is a great deal of factual or legal overlap between counts, then they are considered the same claim for Rule 54(b) purposes.").  Accordingly, Pugh's motion for final judgment is on this basis is **denied**.

---

[1]In a competitive market, Pugh would have received a multi-year grant-in-aid that covered all years of eligibility. *NCAA's prohibition on multi-year Division I football grants-in-aid has injured thousands of student-athletes by causing them to pay millions more in tuition when their Division I football scholarships are reduced or not renewed.* When these Division I football grants-in-aid are reduced or not renewed, a student is left with the decision to remain at the school and pay for tuition and expenses out of pocket, consider transferring, or drop out of school all together. (Filing No. 1 at 30.) (Emphasis added.)

## 2.     __There is Just Reason for Delay__

Pugh also argues that final judgment on Count II is warranted because there is no just reason for delay.  "In determining whether there is no just reason for delay, the district court may properly consider all of the consequences of a final judgment or the lack thereof and balance the competing interests of the parties in the context of the particular case." *VDF FutureCeuticals, Inc. v. Lewis*, No. 13-CV-407, 2014 WL 4477947, at *2 (N.D. Ill. Sept. 10, 2014) (citing *Bank of Lincolnwood v. Fed. Leasing, Inc.,* 622 F.2d 944, 949 (7th Cir.1980)).  The Court considers the following non-exclusive list of factors:

> (1) The relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.*

Pugh contends that it would be unduly prejudicial and costly to proceed with only Count I through the stages of litigation before allowing the Court of Appeals to make a determination as to Count II.  In response, NCAA argues that Pugh failed to demonstrate that significant prejudice or extraordinary consequence would arise if his motion is denied.  NCAA contends that merely eliminating what might otherwise be potentially unnecessary litigation costs is "not a sufficient basis for the required finding that there was 'no just reason for delay.'" *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 184 (2d Cir. 1978) (quoting *W. Geophysical Co. of Am. v. Bolt Associates, Inc.,* 463 F.2d 101, 103 (2d Cir. 1972)).  NCAA also asserts that allowing immediate appeal of Count II will likely amount to more inefficiencies and expenses because the only way that

discovery costs will be conserved is if discovery is stayed until the appeal is final, resulting in a needless lengthened litigation.

In reply, Pugh argues that because he will appeal the dismissal of Count II now or following the resolution of Count I, it is more logical to resolve the appeal sooner than later. As previously mentioned, the Court finds that the relationship between Counts I and II constitutes a compelling reason to withhold 54(b) certification. The facts underlying both claims substantially overlap. If Count I were to give rise to a separate appeal at the end of the case, the Court of Appeals would have to review the same ground that it covered in the first appeal. *See Lottie*, 408 F.3d at 938-39. Accordingly, Pugh's final judgment motion is on this basis is **denied.**

**B.      Certification of Interlocutory Appeal**

In the alternative, Pugh requests the Court to issue a certification of interlocutory appeal. Interlocutory appeals are governed by 28 U.S.C. § 1292(b). Under § 1292(b), a district court may certify an interlocutory order for immediate appeal whenever the order: (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. In other words, to grant a petition for interlocutory review, "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trust. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2002) (emphasis in original). Importantly, each criterion must be met.

There is no dispute that the Court's dismissal of Count II amounts to a question of law, however, NCAA argues that Count II is not controlling, contestable, and its resolution would not speed up litigation.

1.      **Controlling Question of Law**

Pugh contends that the issue raised under Count II is a controlling question of law.  "A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."  *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Associates, Inc.,* 86 F.3d 656, 659 (7th Cir. 1996).  On September 27, 2016, the Court issued an Order granting NCAA's motion to dismiss Count II, concluding that NCAA's eligibility bylaws are "presumptively procompetitive" and do not violate the Sherman Act.  In his Motion for Interlocutory Appeal, Pugh asserts only that the Court's dismissal of Count II demonstrates that Count II is controlling and its resolution would affect the course of litigation.  In response, NCAA contends that Count II is not controlling because the Seventh Circuit sustaining or reversing this Court's dismissal of Count II would not materially impact the trial and resolution of Count I.

In reply, Pugh cites *Hodgkins v. Goldsmith*, *Thrasher-Lyon v. CCS Commercial, LLC*, and *In re Ocwen Fed. Bank FSB*, when asserting that the Seventh Circuit does not require a "controlling" question to affect the remaining claims.  In *Hodgkins*, the court ruled that whether Indiana's curfew law violated the First Amendment was sufficiently "serious to the conduct of the litigation" to constitute a "controlling question of law."  *Hodgkins v. Goldsmith*, No. IP99-1528-C-T/G, 2000 WL 892964, at *26 (S.D. Ind. July 3, 2000).  The court further stated that the issue was controlling because it was the sole ground relied upon by the court to invalidate a state statute and the ruling resolved the sole claim of an entire class.  *Id*.  In *Thrasher-Lyon*, the court ruled that the issues were controlling because the reversal of the court's ruling would essentially end the case and if the court's ruling was affirmed then it would color how the remainder of the case proceeded.  *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 C 04473, 2012 WL 5389722, at *2 (N.D. Ill. Nov. 2, 2012).  Lastly, in *In re Ocwen Fed. Bank FSB*, the court ruled that the question of law was

9

controlling because twenty of a plaintiff's twenty-three counts would be dismissed. *In re Ocwen Fed. Bank FSB*, No. 04 C 2714, 2006 WL 1371458, at *2 (N.D. Ill. May 16, 2006).

In each of these cases cited by Pugh, controlling questions existed because the decision had the real potential to result in the dismissal of the case, the dismissal of a class, or at minimum, affect the course and ultimate resolution of the case. Despite listing the above cases and their holdings, Pugh did not explain why the issue presented under Count II is a controlling question of law. Pugh states only that "Plaintiff has satisfied this element." ([Filing No. 53](.).) Without more facts, the Court finds that, unlike the questions of law in *Hodgkins*, *Thrasher-Lyon,* and *In re Ocwen Fed. Bank FSB*, Count II is not a controlling issue of law.

### 2.   <u>Contestable Question of Law</u>

Pugh also contends that Count II is contestable because *Agnew* acknowledged in dictum a debate over "whether all eligibility rules or just *most* eligibility rules are due a presumption." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 343 n.6 (7th Cir. 2012). An issue is contestable if there is a "difficult central question of law that is not settled by controlling authority", and there is a "substantial likelihood… that the district court['s] ruling will be reversed on appeal." *In re Brand Name Prescription Drugs Antitrust Litigation,* 878 F.Supp. 1078, 1081 (N.D.Ill.1995).

This Court dismissed Count II pursuant to *Agnew*, ruling that NCAA eligibility bylaws are "presumptively competitive." Pugh asserts that there is a difference between eligibility rules that protect amateurism and the challenged "year-in-residence" requirement. Pugh contends that "presumptively competitive" eligibility rules are "essential to the very existence of… college football" because they "define what it means to be an amateur or a student-athlete." *Id.* at 343. On the other hand, Pugh asserts that the "year-in-residence" requirement has little relation to

NCAA's academic justification and the commercial purpose of the rule prevents it from being "presumptively competitive."

In response, NCAA argues that the Court's dismissal of Count II was based on a straightforward application of the Seventh Circuit's decision in *Agnew* and no conflicting law exists.  NCAA contends that the issue is not contestable merely because it raises a purported question of first impression, and further asserts that Pugh failed to show that there is a substantial likelihood that the Court's ruling will be reversed on appeal.  In reply, Pugh relies on *Boim* when arguing that Count II raises a novel issue and, despite NCAA's contention, the issue is contestable. *See Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev*., 291 F.3d 1000, 1007–08 (7th Cir. 2002) (holding that questions of first impression regarding the interpretation of statutes were contestable).

The Court agrees that novel and difficult questions of first impression, similar to the interpretation of a statute, are contestable, however, "the mere lack of judicial precedent on the issue does not establish substantial ground for difference of opinion." *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.,* 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002) (quoting *In re Demert & Dougherty, Inc.,* 2001 WL 1539063, at *6 (N.D.Ill.2001)); *See also Patrick v. Pyod, LLC,* No. 1:14-CV-00539-RLY, 2014 WL 5343284, at *1 (S.D. Ind. Oct. 20, 2014).  The Court finds that Pugh has not articulated how Count II presents a difficult central question of law. Pugh asserts that he will explain on appeal the substantial grounds against presuming that the "year-in-residence" requirement is procompetitive.  This is insufficient. Without more facts, the Court is unable to determine whether a "substantial ground for difference of opinion" exists.  *See Hodgkins*, 2000 WL 892964, at *26 (holding that although the court

ultimately sided with plaintiffs, there existed a "substantial ground for difference of opinion" where defendants presented "very substantial arguments" for their position).

Because the factors are "conjunctive, not disjunctive," Pugh's Motion fails because Pugh has not presented evidence that Count II is a controlling and contestable question of law. *See Ahrenholz*, 219 F.3d at 676. The Court also notes that, as outlined above, an interlocutory appeal would not speed up the litigation in this case. An "[i]nterlocutory appeal is fitting only where 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11-CV-01108-SEB, 2015 WL 4878191, at *2 (S.D. Ind. Aug. 14, 2015) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). The Court finds that an exceptional circumstance does not exist.

## IV.   CONCLUSION

For the reasons set forth above, Pugh's Motion for Final Judgment and Certification of Interlocutory Appeal is **DENIED**.  (Filing No. 49.)

**SO ORDERED.**

Date: 12/6/2016

DISTRIBUTION:

Jacob K. Danziger
350 S. Main Street, Suite 210,
jdanziger@schiffhardin.com

Daniel E. Pulliam
FAEGRE BAKER DANIELS LLP (Indianapolis)
daniel.pulliam@faegrebd.com

Kathy Lynn Osborn
FAEGRE BAKER DANIELS LLP (Indianapolis)
kathy.osborn@faegrebd.com

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
dank@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
steve@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO, LLP
beth@hbsslaw.com

Joseph N. Williams
RILEY WILLIAMS & PIATT, LLC
jwilliams@rwp-law.com

William N. Riley
RILEY WILLIAMS & PIATT, LLC
wriley@rwp-law.com

Cherie Phears O'Reilly
SCHIFF HARDIN LLP Atlanta
coreilly@schiffhardin.com

Gregory L. Curtner
SCHIFF HARDIN, LLP - Michigan
gcurtner@schiffhardin.com

Robert James Wierenga
SCHIFF HARDIN, LLP - Michigan
rwierenga@schiffhardin.com

Suzanne L. Wahl
SCHIFF HARDIN, LLP - Michigan
swahl@schiffhardin.com

Sara Willingham
THE PAYTNER LAW FIRM PLLC
swillingham@paynterlawfirm.com

Stuart McKinley Paynter
The Paynter Law Firm PLLC
stuart@paynterlawfirm.com

13