UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEVIN PUGH, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>          Defendant. | Case No. 1:15-cv-01747 TWP-TAB |

## DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S STATEMENT OF CLAIMS OR DEFENSES

Pursuant to the Case Management Plan (Dkt. 59 at II.D), defendant National Collegiate Athletic Association ("NCAA") hereby submits its Statement of Defenses. By listing a defense below, the NCAA does not intend to assume, and does not assume, the burden of proof for proving the defense if and to the extent that the burden of proof with respect to the issue raised lies with Plaintiff as a matter of law. The NCAA reserves the right to supplement or otherwise amend this Statement as may be necessary and appropriate pursuant to further orders of the Court and litigation of this action. Further, the NCAA submits this Statement of Defenses only with respect to Count I of Plaintiff's Complaint, which Plaintiff has not sought to certify as a class claim. In the event a class is certified, the NCAA will amend this Statement as necessary.

***The NCAA's financial aid bylaws are procompetitive.*** The bylaw and former bylaw at issue in this case are part of the NCAA's overall financial aid framework.[1] To the extent that

---

[1] Plaintiff purports to challenge former Bylaw 15.3.3.1, which stated that athletics-based scholarships would be offered as one-year renewable grants-in-aid, and current Bylaws 15.5.6.1 and 15.5.6.2, which set the annual limit on the number and value of financial aid awards for FBS and FCS football teams.

1

these NCAA rules can be characterized as restraints of trade at all – and the NCAA does not believe that such a characterization is appropriate – they are "ancillary" restraints, i.e., restraints "that are part of a larger endeavor whose success they promote" and that are therefore entitled to evaluation under the Rule of Reason.  *See Polk Bros., Inc. v. Forest City Enterprises, Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985) (citing *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 104 S. Ct. 2948, 82 L. Ed. 2d 70 (1984)).  *See id.* at 188 (stating that joint ventures are assessed under the Rule of Reason and that "[w]hen cooperation contributes to productivity through integration of efforts, the Rule of Reason is the norm.").  If Plaintiff meets his burden of showing an agreement with an anticompetitive effect on a given market within a given geographic area, the NCAA will have the opportunity to show that the restraint in question actually has a procompetitive effect on balance.  *Agnew v. NCAA*, 683 F.3d 328, 335-36 (7th Cir. 2012).  By filing this statement, the NCAA does not concede that Plaintiff will be able to make such a showing of anticompetitive effect or that the NCAA will ultimately be required to make a showing of procompetitive effect.

The bylaws at issue here are part of the NCAA's overall financial aid framework.  That framework allows for the creation and preservation of the NCAA as a joint venture and is therefore procompetitive.  *See Agnew*, 683 F.3d at 341 ("*Board of Regents* implies that … most [NCAA] regulations will be a 'justifiable means of fostering competition among amateur athletics teams,' and therefore procompetitive."); *Bd. of Regents*, 468 U.S. at 117, 101-02 (holding that "[i]t is reasonable to assume that most of the regulatory controls of the NCAA are … procompetitive because they enhance public interest in intercollegiate athletics," and specifically citing NCAA rules that prevent student-athletes from being paid as an example of those clearly procompetitive rules).  Since the bylaws at issue here are part and parcel of a

Division I rules structure that addresses amateurism, eligibility, and financial aid, the procompetitive benefits that those rules allow the NCAA to achieve outweigh any purported anticompetitive effects that the plaintiff in this case may try to prove. *See Bd. of Regents*, 468 U.S. at 117 ("It is reasonable to assume that most of the regulatory controls of the NCAA are justifiable means of fostering competition among amateur athletic teams and therefore procompetitive); *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990) (whether a rule is "unreasonable" depends on "whether its anticompetitive effects outweigh its procompetitive effects"); *Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 977 (7th Cir. 1999) (in rule of reason cases, plaintiff must show that the restraint had an "anticompetitive, welfare-reducing effect that is not overcome by any pro-competitive, welfare-enhancing consequences" of the restraint).

*The bylaws preserve the character of NCAA intercollegiate athletics.* NCAA financial aid, eligibility and amateurism bylaws, including the bylaws Plaintiff challenges here, preserve the nature of the NCAA's joint venture and thereby (a) preserve the NCAA's valuable "branding" and appeal to consumers of various college sports associated "product lines"; (b) permit NCAA member institutions to create and maintain a unique form of intercollegiate athletic competition that could not exist without agreement among the competing schools, to the benefit of students, the public and the schools; (c) preserve the value of NCAA joint venture participation for NCAA student-athletes, member institutions and conferences; and (d) encourage entry into intercollegiate athletics, both by prospective student-athletes and by colleges and universities. Rules that preserve the nature of the NCAA joint venture "product" are procompetitive. *Bd. of Regents*, 468 U.S. at 120 ("the preservation of the student-athlete in

higher education adds richness and diversity to intercollegiate athletics and is entirely consistent with the goals of the Sherman Act").

*The bylaws preserve and increase consumer choice.* Restraints are procompetitive when they increase consumer choice. *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 890, 127 S. Ct. 2705, 168 L. Ed. 2d 2705 (2007) (restraints are procompetitive when they "give consumers more options"); *Bd. of Regents*, 468 U.S. at 101-102 (finding the NCAA's actions "widen consumer choice – not only the choices available to sports fans but also those available to athletes – and hence can be viewed as procompetitive"); *Rock v. NCAA*, 928 F. Supp. 2d 1010, 1026 (S.D. Ind. 2013) ("Because the bylaw at issue actually widens consumer choice in the marketplace, it can be viewed as procompetitive as a matter of law."). The NCAA intends to prove that its regulations regarding permissible financial aid, including bylaws defining the period of award and setting the maximum team limits on grants-in-aid, preserved and increased consumer choice.

*The bylaws preserve and increase competitive balance.* Restraints are procompetitive when they promote competitive balance among athletic teams. *American Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 204, 130 S. Ct. 2201, 176 L. Ed. 2d 947 (2010) ("We have recognized, for example, 'that the interest in maintaining a competitive balance' among 'athletic teams is legitimate and important.'") (citing *Bd. of Regents*, 468 U.S. at 117). The NCAA intends to prove that its regulations regarding permissible financial aid, including bylaws defining the period of award and setting the maximum team limits on grants-in-aid, preserve and increase competitive balance, in part by permitting fair competition in recruiting among Division I football teams.

*The bylaws increase efficiency in recruiting.* Standard-setting increases efficiencies. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500-501, 108 S. Ct. 1931, 100 L. Ed. 2d 497 (1988) (discussing procompetitive nature of standard-setting). Standard-setting in NCAA financial aid bylaws eliminates information asymmetries, increases the ability of student-athletes to best "comparison shop" when determining where to attend college, and sets clear parameters for member institutions looking to provide student-athletes with a full and valuable educational experience.

*The bylaws preserve and increase output.* Restraints are procompetitive when they increase output. *Bd. of Regents*, 468 U.S. at 114 (finding that a restraint that produces procompetitive efficiencies would increase output); *Chi. Prof'l Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 597 (7th Cir. 1996) ("The core question in antitrust is output. Unless a contract reduces output in some market, to the detriment of consumers, there is no antitrust problem."). The NCAA intends to prove that its regulations regarding permissible financial aid, amateurism and eligibility, including bylaws defining the period of award and setting the maximum team limits on grants-in-aid, preserve and increase output in multiple "product lines" related to Division I football and NCAA intercollegiate athletics as a whole. Preservation of the character of intercollegiate athletics and the collegiate model, competitive balance, and fair competition in recruiting are all characteristics that have led NCAA member institutions to join and remain engaged in NCAA intercollegiate athletics generally and in Division I intercollegiate athletics, including Division I football, in particular. Steady and increasing appeal of the collegiate model to consumers has resulted in the creation and expansion of output across multiple "college sports" related "product lines," and has further increased participation opportunities and the benefits that result therefrom for student-athletes.

*Plaintiff Devin Pugh lacks standing.* While the NCAA does not concede that antitrust standing is an issue on which it will bear the burden of proof, at least one court in this district has held that standing generally is an affirmative defense. *See IGF Ins. Co. v. Continental Cas. Co.*, No. 1:01-cv-799, 2007 WL 1068456, at *15 (S.D. Ind. Mar. 31, 2007) (Young, J.). The NCAA therefore makes the following statement regarding its intent to prove Plaintiff's lack of standing at trial.[2]

*Plaintiff lacks antitrust standing.* Plaintiff lacks antitrust standing and therefore cannot bring this claim. A private antitrust plaintiff must prove that he has suffered antitrust injury and therefore has antitrust standing. *Kochert v. Greater Lafayette Health Services, Inc.*, 463 F.3d 710, 716 (7th Cir. 2006). When determining whether a plaintiff has antitrust standing, the court must consider "(1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) the presence of improper motive; (3) the directness between the injury and the market restraint; (4) the speculative nature of the damages; and (5) the risk of duplicative recoveries or complex damages apportionment." *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 484 (7th Cir. 2002).

Here, evidence will show that Plaintiff Devin Pugh's alleged injury was not caused by any of the challenged NCAA bylaws. Since Plaintiff's athletics-based scholarship was not renewed as a result of his own actions and not as the result of any challenged NCAA bylaw, he cannot have antitrust standing to challenge the bylaws. Further, evidence will show that even if the challenged NCAA bylaws had not been in effect, Plaintiff still would not have received a multi-year scholarship from Weber State University, or from any other Division I school.

---

[2] Because the Court has dismissed all of Plaintiff's claims for injunctive relief, Dkt. 48 at 8-10, this Statement of Defenses only addresses Plaintiff's standing to seek damages for Count I.

*Plaintiff lacks standing for claims related to FBS football.* Plaintiff Devin Pugh never participated in FBS football. Because NCAA bylaws governing FBS football had no effect on Plaintiff, he lacks standing to challenge claims related to bylaws specific to FBS football.

*Plaintiff Devin Pugh failed to mitigate his damages.* The tort doctrine of mitigation applies to antitrust cases and requires a plaintiff to use his best efforts to minimize the damages allegedly caused by a defendant's wrongful conduct. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 556-58 (7th Cir. 1986). The NCAA intends to prove that Plaintiff failed to mitigate his alleged damages. Evidence will show that Plaintiff failed to take advantage of an opportunity to continue his education at Weber State University on a full academic scholarship, which would have minimized or entirely obviated the damages allegedly caused by the challenged NCAA bylaws.

Dated:  October 2, 2017                         SCHIFF HARDIN LLP

/s/ *Robert J. Wierenga*
Robert J. Wierenga
Suzanne Wahl (*pro hac vice*)
Jacob Danziger (*pro hac vice*)
350 S. Main St., Suite 210
Ann Arbor, MI 48104
Phone: 734-222-1500
Fax:    734-222-1501
Email: rwierenga@schiffhardin.com

Gregory L. Curtner
Riley Safer Holmes & Cancila LLP
70 West Madison Street, Suite 2900
Chicago, IL 60602
Phone: 312-471-8756
Fax:    312-471-8701
Email: gcurtner@rshc-law.com

Kathy L. Osborn (21927-53)
Daniel E. Pulliam (29439-49)
Faegre Baker & Daniels LLP
300 North Meridian Street, Suite 2700

Indianapolis, IN 46204
Phone: 317-237-0300
Fax:    317-237-1000
Email: kathy.osborn@faegrebd.com
Email: daniel.pulliam@faegrebd.com

*Attorneys for Defendant NCAA*

**CERTIFICATE OF SERVICE**

   I hereby certify that on October 2, 2017, a copy of the foregoing was served on the following counsel for Plaintiff via electronic mail:

William N. Riley
Joseph N. Williams
RILEY WILLIAMS & PIATT, LLC
Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
Phone: (317) 633-5270
Fax: (317) 426-3348
Email: wriley@rwp-law.com
Email: jwilliams@rwp-law.com

Stuart McKinley Paynter
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, DC 20005
Phone: (202) 626-4486
Fax: (866) 734-0622
Email: stuart@paynterlawfirm.com

Sara Willingham
THE PAYNTER LAW FIRM PLLC
1340 Environ Way
Chapel Hill, NC 27517
Phone: (919) 913-5531
Fax: (866) 734-0622
Email: swillingham@paynterlawfirm.com

Daniel J. Kurowski
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Phone: (708) 628-4949
Fax: (708) 628-4950
Email: dank@hbsslaw.com
Email: beth@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101

Phone: (206) 623-7292
Fax:     (206) 623-0594
Email: steve@hbsslaw.com

                   */s/ Robert J. Wierenga*
                   Robert J. Wierenga
                   350 S. Main St., Suite 210
                   Ann Arbor, MI 48104
                   Phone: (734) 222-1500
                   Fax:     (734) 222-1501
                   Email: rwierenga@schiffhardin.com

AA\200310821.1